IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMERICAN TRIGGER PULLERS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 4:19-cv-02694 |
| | § | |
| SHAWN WYLDE A.K.A. SHAWN JOYCE, | § | |
| WYLDE INC. D/B/A AAF NATION, ERIC | § | |
| SHANE DAVIS, SHANE DAVIS INC., | § | |
| TEXAS PRIDE UNLIMITED LLC D/B/A | § | |
| TEXAS PRIDE APPAREL, ERNEST | § | |
| BROWNE, OAF NATION INC., AND | § | |
| SEMPER SILKIES LLC, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT SHAWN WYLDE'S**
**FEDERAL RULE OF CIVIL PROCEDURE 11 MOTION FOR SANCTIONS**

Defendant, Shawn Wylde, ("Defendant" or "Wylde") hereby files this "Defendant Shawn Wylde's Federal Rule of Civil Procedure 11 Motion for Sanctions." If ever there was a case where attorneys' fees were warranted under Rule 11, this is the case. Wylde would not file this Motion if he did not believe a violation of Rule 11 of the Federal Rules of Civil Procedure had occurred. Unfortunately, as set forth below, given the knowledge Plaintiff and its counsel had in their possession prior to filing suit, only two options remained for Plaintiff: either (a) file the lawsuit only against Shane Davis, Shane Davis, Inc. and/or Texas Pride Unlimited ("Texas Pride"), or (b) perform a further investigation to determine if there was any good faith basis to disbelieve the information they had. Plaintiff did neither, and instead filed the lawsuit to include Wylde and his various entities despite actual knowledge that Wylde did not know of or take part in any of the allegedly infringing activity forming the basis of this lawsuit.

## Table of Contents

I. Table of Authorities ........................................................................................................... 3
II. Nature and State of the Proceeding .................................................................................. 4
III. Issues Presented ................................................................................................................ 5
IV. Facts .................................................................................................................................. 5
   A. Shane Davis and Texas Pride's alleged infringement ................................................ 5
   B. Facts known to Plaintiff and its counsel prior to filing suit ....................................... 6
   C. Filing the Complaint and statements known not to be true ....................................... 7
   D. Post- filing Dispositive Motions and discovery ....................................................... 11
V. AUTHORITY AND ARGUMENT ................................................................................ 14
   A. Legal Standard ......................................................................................................... 14
   B. Plaintiff and its counsel knew unequivocally Wylde had no liability ...................... 15
   C. Plaintiff and its Counsel had no good faith basis to amend the pleadings ............... 16
   D. What Plaintiff and its Counsel should have done .................................................... 17
VI. CONCLUSION AND PRAYER FOR RELIEF ............................................................. 18

## I. Table of Authorities

*Baker Hughes Process & Pipeline Servs., L.L.C. v. UE Compression, L.L.C.,* 938 F.3d 661 (5th Cir. 2019) .................................................................................................................. 5

*Connor v. Stewart*, No. 1:17-CV-827-RP, 2018 U.S. Dist. LEXIS 99519 (W.D. Tex. June 14, 2018) ............................................................................................................................ 15

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ................................................ 15

*M2 Tech., Inc. v. M2 Software, Inc.*, 748 F. App'x 588 (5th Cir. 2018) ......................... 15

*Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542 (5th Cir. 2001) ............................. 15

*Silver v. Bemporad*, No. SA-19-CV-00284-XR, 2019 U.S. Dist. LEXIS 66036 (W.D. Tex. Apr. 18, 2019) ..................................................................................................................... 15

*Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866 (5th Cir. 1988) ................................ 15

*Tollett v. City of Kemah,* 285 F.3d 357 (5th Cir. 2002) ..................................................... 5

*Whitehead v. Food Max of Miss., Inc.,* 332 F.3d 796 (5th Cir. 2003) ....................... 5, 15

## II.     Nature and State of the Proceeding

On July 23, 2019, Plaintiff filed its Original Complaint ("Complaint"). (Doc. 1). On October 4, 2019, Wylde filed his Rule 12(b)(6) Motion to Dismiss (Doc. 28-1).[1] Defendant Wylde filed a Motion for Summary Judgement on February 21, 2020. Defendants Shane Davis, Shane Davis, Inc., and Texas Pride Unlimited, LLC d/b/a Texas Pride Apparel (collectively the "Non-Moving Defendants") were not joined in either Motion and are not represented by the undersigned counsel.

Plaintiff filed a response (Doc. 33) on November 8, 2019 and Wylde filed his reply on November 13, 2019 (Doc. 34) to the Motion to Dismiss.

During the Court Ordered telephonic Status Conference on January 22, 2020, the parties and the Court addressed (a) pending discovery/responses to interrogatories (due on January 29), (b) whether Plaintiff intended to amend its Pleadings, and (c) whether the parties wanted the Court to treat the Motion to Dismiss as to Wylde as a Motion for Summary Judgment and rule on it. As to the latter, the undersigned indicated that Defendant Wylde wished the Court to do so, and Plaintiff opposed. The Court ultimately chose instead to extend the deadline to amend the pleadings after Plaintiff received answers to its pending interrogatories. The new deadline was February 14, 2020.

Plaintiff ignored the deadline, forcing Defendant Wylde to file a Motion for Summary Judgement on February 21, 2020. Plaintiff's response to the Motion for Summary Judgement is due on March 13, 2020.

---

[1] Several Defendants filed the Motion to Dismiss. However, Plaintiff has since filed a Notice of Dismissal as to Defendants Wylde Inc., OAF Nation Inc., Semper Silkies LLC, and Ernest Browne. Therefore, Shawn Wylde, in his individual capacity, is the only remaining "Movant" of that Motion, the Motion for Summary Judgement, and this Motion.

Defendants, Shane Davis, Shane Davis, Inc., and Texas Pride Unlimited, LLC d/b/a Texas Pride Apparel (collectively the "Non-Moving Defendants") are not joined in this Motion, and are not represented by the undersigned counsel.

## III. Issues Presented

Wylde presents the following issue for consideration under Rule 11.

- Plaintiff and its counsel violated Rule 11(b) of the Federal Rules of Civil Procedure by (a) naming Defendants Shawn Wylde, Wylde Inc., OAF Nation Inc., Semper Silkies LLC, and Ernest Browne, and (b) maintaining Wylde individually in this lawsuit.

The Court of Appeals reviews the grant or denial of Rule 11 sanctions under an abuse of discretion standard. *Tollett v. City of Kemah,* 285 F.3d 357 (5th Cir. 2002); *Whitehead v. Food Max of Miss., Inc.,* 332 F.3d 796 (5th Cir. 2003); *Baker Hughes Process & Pipeline Servs., L.L.C. v. UE Compression, L.L.C.,* 938 F.3d 661 (5th Cir. 2019).

## IV. Facts

### A. Shane Davis and Texas Pride's alleged infringement

The causes of action asserted in this lawsuit revolve around alleged use of copyrighted photographs (the "ATP Photos") and the use of a design on t-shirts (the "Design") by the Defendants through Texas Pride website. Shane Davis is, and at all relevant times was the proprietor of Texas Pride. Shane Davis formed Texas Pride on October 14, 2016 to sell promotional products, clothes and merchandise. Between January and March of 2019, Davis, through Texas Pride's website, began selling t-shirts bearing the Design. Texas Pride also used the ATP Photos on its website to promote sales of the t-shirts bearing the Design, after finding both on several websites on the internet. However, Texas Pride fell into financial difficulty, and Davis ultimately terminated Texas Pride on May 7, 2019.

On June 21, 2019, Plaintiff, through its counsel, sent demand letters to all of the Defendants, complaining of Texas Pride's use of the Design and the ATP Photos, and demanding

payment of one hundred fifty thousand dollars ($150,000). A true and correct copy of the letter sent to Wylde is attached hereto as Exhibit A. However, as to Wylde, Wylde, Inc. AAF Nation, OAF Nation and Semper Silkies, Plaintiff's counsel fails to allege any connection with Texas Pride, or any other facts showing use by these Defendants of the Design and ATP Photos. Thus, the demand for $150,000 appears to be nothing more than a shakedown.

### B. Facts known to Plaintiff and its counsel prior to filing suit

Wylde and Davis responded to the demand letters on June 25, 2019 and June 28, 2019. Due to those responses, Plaintiff and its counsel learned the following:

Shane Davis indicated that he did not willfully infringe the Design or ATP Photos, and "[t]he other parties mentioned are not responsible," and "[Wylde] nor the others made any profit on your clients [sic] design. I didn't tell the other parties about your clients [sic] design and didn't think much of it. I don't even know all the people you listed." Davis rightfully accepted responsibility. He clearly indicated that Wylde had no role in Texas Pride, no knowledge of the alleged infringement, and that he (Davis) had no money to pay a judgment or any damages. A true and correct copy of this communication is attached hereto as Exhibit B.

Davis' response was factually accurate, and merely corroborated what Plaintiff and its counsel already knew. Attached hereto as Exhibit C is a true and correct copy of an email and response letter sent on June 25, 2019 from Wylde's General Counsel to Plaintiff's counsel. Therein, counsel for Wylde indicated:

> "Neither Mr. Wylde, Ernest Browne, nor myself currently have, nor have previously exercised at any time, control over the content, marketing, or sale of products through the Texas Pride Unlimited ("TPU") website. Presently, TPU is one of numerous online merchants who we license our designs to for sale through their various web portals. As you correctly point out in your draft complaint, Mr. Shane Davis is the proprietor of this enterprise, not Mr. Wylde, Ernest Browne, nor myself or any of our companies.

> As far as the accusations levied towards myself and my associates regarding intellectual property theft et. al., we unequivocally and categorically deny any and all claims of malfeasance contained in the draft complaint.
>
> My clients are, as always, open to discussing potential partnerships and licensing agreements with ATP. Please convey the sentiments in this letter to your clients, but understand that we have no intention of acquiescing to a demand for payment for alleged conduct over which we had no connection, control or responsibility."

As of at least June 28, 2019, Plaintiff and its counsel had heard from all of the Defendants. All of the Defendants established Wylde neither directed, financially benefitted, aided, contributed nor induced Texas Pride in any way to use the Design and/or ATP Photos. All of the Defendants told the same story. Thus, by June 28, 2019, Plaintiff and its counsel knew (a) Davis and Texas Pride acted alone, (b) Wylde, Browne and their entities had did not know or participate, but (c) Texas Pride had already been dissolved before notice of Plaintiff's claim and (d) Davis had no money. The latter facts proved problematic for Plaintiff and its unjustified demand for $150,000.

### C. Filing the Complaint and statements known not to be true

Undeterred, Plaintiff, on July 23 2019, filed this lawsuit against all of the original Defendants, including Wylde individually, for copyright infringement, unfair competition, and several related causes of action. In doing so, Plaintiff attempted to overlook the bad facts it faced by lumping in all the co-Defendants as actors when both Plaintiff and its counsel knew Texas Pride and Davis were the only ones potentially liable.

In this regard, as to Wylde, Wylde Inc., OAF Nation Inc., Semper Silkies LLC, and Ernest Browne, several untrue statements were made in the Complaint. A table of these statements along with the documents negating the assertion <u>which were in Plaintiff's and its counsel's possession at the time of filing the Complaint</u> is as follows:

| **Statement from Plaintiff's Complaint filed July 23, 2019** | **Location in Complaint** | **Conclusory evidence to the contrary** |
|---|---|---|
| "Defendants had been appropriating and commercially exploiting American's original t-shirt design and promotional photographs on the Texas Pride Apparel web site and social media pages, which operate in the same trade channels as American." | ¶2 | **Letter from David J. DeBruyn dated 6/24/2019**<br><br>**Email from Shane Davis dated 6/28/2019** |
| "Defendants responded by deleting American's correspondence, blocking it from further access to the Texas Pride Apparel social media pages, and continuing its willful infringement on American's intellectual property." | ¶3 | **Letter from David J. DeBruyn dated 6/24/2019** |
| "AAF Nation touts itself as an Austin, Texas clothing store called "American AF" (Exhibit I), and sells many of the same products as Texas Pride Apparel." | ¶26 | **Letter from David J. DeBruyn dated 6/24/2019** |
| "On information and belief, each of these parties exercise direct control over Texas Pride Unlimited LLC d/b/a Texas Pride Apparel."<br><br>Plaintiff uses "each of these parties" to refer to Shawn Wylde and other defendants. | ¶27 | **Letter from David J. DeBruyn dated 6/24/2019**<br><br>**Email from Shane Davis dated 6/28/2019** |
| "On February 17, 2019, American became aware that Defendants had been commercially exploiting the Design on their own apparel (the "Infringing Products") via the Texas Pride Apparel Web Site and the Texas Pride Apparel social media pages, in bad faith, and in the same trade channels as American." | ¶28 | **Letter from David J. DeBruyn dated 6/24/2019**<br><br>**Email from Shane Davis dated 6/28/2019** |
| "American also became aware that Defendants had been using the ATP photos depicting American shirts to bolster their own sales—falsely implying that Ms. Swanson and Mr. Biggs endorsed their products and brands." | ¶29 | **Letter from David J. DeBruyn dated 6/24/2019**<br><br>**Email from Shane Davis dated 6/28/2019** |

| | | |
|---|---|---|
| "…[B]ut in response Defendants deleted American's comments and blocked American from further access to Defendants' online content." | ¶31 | **Letter from David J. DeBruyn dated 6/24/2019** |
| "Defendants' wrongful conduct was committed willfully and in violation of American's rights,…." | ¶34 | **Letter from David J. DeBruyn dated 6/24/2019**<br><br>**Email from Shane Davis dated 6/28/2019** |
| "Defendants' wrongful conduct has enabled Defendants to illegally obtain profit." | ¶35 | **Letter from David J. DeBruyn dated 6/24/2019**<br><br>**Email from Shane Davis dated 6/28/2019** |
| "Through Defendants' conduct, including Defendants' copying and public commercial display of the ATP Photos, Defendants have directly infringed American's exclusive rights in the ATP Photos in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501." | ¶42 | **Letter from David J. DeBruyn dated 6/24/2019**<br><br>**Email from Shane Davis dated 6/28/2019** |
| "On information and belief, Defendants' wrongful conduct was and continues to be willful and with full knowledge of American's rights in the ATP Photos, and has enabled Defendants to illegally obtain profit." | ¶43 | **Letter from David J. DeBruyn dated 6/24/2019**<br><br>**Email from Shane Davis dated 6/28/2019** |

| | | |
|---|---|---|
| "As a direct and proximate result of Defendants' wrongful conduct, American has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), American is entitled to recovery of each Defendant's profits attributable to Defendants' wrongful conduct; including all profits derived from advertisements displaying the ATP Photos, products sold through Defendants' use of the ATP Photos, and other sources of revenue tied to Defendants' use of the ATP Photos; and an accounting of and a constructive trust with respect to such profits." | ¶44 | **Letter from David J. DeBruyn dated 6/24/2019**<br><br>**Email from Shane Davis dated 6/28/2019** |
| "Defendants' advertisements, promotions, sales, and distribution of the Infringing Products and Defendants' commercial use of the ATP Photos violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)." | ¶46 | **Letter from David J. DeBruyn dated 6/24/2019**<br><br>**Email from Shane Davis dated 6/28/2019** |
| "Defendants' wrongful conduct constitutes unfair competition and false designation of origin, at least because Defendants obtained an unfair advantage over American through Defendants' use of the Design and the ATP Photos, because such uses are likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the Infringing Products, and because Defendants created the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with American." | ¶47 | **Letter from David J. DeBruyn dated 6/24/2019**<br><br>**Email from Shane Davis dated 6/28/2019** |
| "Defendants' use of the Design and ATP Photos has caused and, unless enjoined, will continue to cause substantial and irreparable injury to American for which American has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with American and its products." | ¶49 | **Letter from David J. DeBruyn dated 6/24/2019**<br><br>**Email from Shane Davis dated 6/28/2019** |

| | | |
|---|---|---|
| "On information and belief, Defendants' use of the Design and ATP Photos has been intentional, willful, and malicious. Defendants' bad faith is evidenced by the similarity of the Infringing Products to American's products, Defendants' copying and subsequent use of the ATP Photos to market the Infringing Products, Defendants' deleting American's comments and blocking American from accessing its social media profiles, Defendants' filing the recent certificate of termination for Texas Pride Unlimited LLC, and by Defendants' continuing disregard for American's rights." | ¶50 | **Letter from David J. DeBruyn  dated 6/24/2019**<br><br>**Email from Shane Davis dated 6/28/2019** |
| "By virtue of Defendants' acts pleaded above, Defendants have engaged in unfair competition with American in violation of the common law of the State of Texas." | ¶53 | **Letter from David J. DeBruyn  dated 6/24/2019**<br><br>**Email from Shane Davis dated 6/28/2019** |
| "By virtue of Defendants' acts pleaded above, Defendants have misappropriated American's time, labor, skill, and money in violation of the common law of the State of Texas." | ¶55 | **Letter from David J. DeBruyn  dated 6/24/2019**<br><br>**Email from Shane Davis dated 6/28/2019** |
| "By virtue of Defendants' acts pleaded above, Defendants have been unjustly enriched pursuant to the common law of the State of Texas." | ¶57 | **Letter from David J. DeBruyn  dated 6/24/2019**<br><br>**Email from Shane Davis dated 6/28/2019** |

### D. Post- filing Dispositive Motions and discovery

The filing of this lawsuit prompted the undersigned to appear in this case. The undersigned counsel communicated the facts contained herein to Plaintiff's counsel in an attempt

to get the lawsuit dismissed before the parties incurred significant expenses. When Plaintiff's counsel refused to dismiss these Defendants, they[2] filed a Rule (12)(b)(6) Motion to Dismiss (Doc 28)[3] on October 4, 2019.

Plaintiff did not bother responding to the Motion to Dismiss as to Wylde, Inc., Ernest Browne, OAF Nation, Inc. or Semper Silkies, Inc., as Plaintiff and its counsel knew prior to filing the lawsuit that Plaintiff had no claim against these Defendants. Instead, Plaintiff simply (and wisely) dismissed these Defendants without prejudice. Inexplicably, Plaintiff steadfastly refused to dismiss Wylde, and instead responded to the Motion as to Wylde in his individual capacity, and indicated to the Court, *inter alia*, it would amend its pleadings. Plaintiff never amended the pleadings.

On December 3, 2019, the Court entered a Scheduling Order (Doc 36) which included a deadline to amend the Pleadings and add additional parties on January 10, 2020. Wylde filed a Motion to Suspend the Scheduling Order (Doc 37) because the Rule 12(b)(6) Motion was pending before the Court as to Wylde individually, and therefore Wylde had not answered. During the Court Ordered telephonic Status Conference on January 22, 2020, the parties and the Court addressed (a) pending discovery/responses to interrogatories (due on January 29), (b) whether Plaintiff intended to amend its Pleadings, and (c) whether the parties wanted the Court to treat the Motion to Dismiss as to Wylde as a Motion for Summary Judgment and rule on it. As to the latter, the undersigned indicated that Defendant Wylde wished the Court to do so, and Plaintiff opposed. The Court ultimately chose instead to extend the deadline to amend the

---

[2] Shawn Joyce, Inc. d/b/a AAF Nation, Ernest Browne, OAF Nation, Inc., and Semper Silkies, LLC (the "Moving Defendants") – all represented by the Undersigned Counsel.
[3] The Motion to Dismiss was attached to the Motion for Leave, which was unopposed. Prior to the Court ruling on the Motion for leave, Plaintiff responded to the Motion to Dismiss (Doc. 33)

pleadings after Plaintiff received answers to its pending interrogatories. The new deadline was February 14, 2020.

Defendant Wylde timely answered the pending interrogatories, which are attached hereto as Exhibit D. Wylde testified in his responses, *inter alia,* to the following:

1. He did not use the Design or the ATP Photos, and did not know of Davis' and Texas Pride's use until this lawsuit had been filed;

2. He did not offer for sale goods and services connected with the Design or the ATP Photos;

3. He did not plan to use the Design or the ATP Photos in conjunction with the offer for sale of any goods or services;

4. He did not advertise or create promotional/marketing materials, or planned to do so, using the Design or the ATP Photos; and

5. He did not perform any market research concerning the Design or the ATP Photos.[4]

The unrepresented Defendants, Eric Shane Davis and Texas Pride, also answered identical interrogatories posed to them, which were Bates Labelled and produced by the undersigned, and are attached hereto as Exhibit E.[5] Those answers show that <u>only</u> Shane Davis and Texas Pride made use of the Design and ATP photos from January – March 2019 to sell t-shirts. Thus, now Plaintiff and its counsel had more admissible and reliable evidence that Shane Davis and Texas Pride acted alone.

In a communication dated February 4, 2020, attached hereto as Exhibit F, the undersigned sent a Rule 11 letter to Plaintiff's counsel indicating his belief that a Rule 11 violation had, and continued to occurred, and the basis for that belief, a copy of which is attached

---

[4] See Exhibit A.
[5] Plaintiff failed to serve those Interrogatories to the undersigned, so their pendency was not known until late January.

hereto as Exhibit F. Yet, Plaintiff and its counsel persisted, and sent a response the same day, a copy of which is attached hereto as Exhibit G, indicating they would do their best to "align" the evidence with their claim. The problem was they already knew the evidence could not align with their claim as to Wylde.

In response to Wylde's Interrogatory Answers, in a last ditch grasp for liability against Wylde, Plaintiff, through its counsel, raised a new issue in a communication discussing a new entity which Wylde owns a portion of, Print Brains, LLC.[6] Plaintiff now asserted liability against Print Brains, claiming that Print Brains printed the t-shirts with the Design. Wylde responded through his counsel in a communication dated February 13, 2020, clearly showing (a) Print Brains has no liability, and (b) adding Print Brains to the lawsuit would be a further violation of Rule 11. Wylde attached to that communication Verified Amended Interrogatory Answers to the same affect. The February 13, 2020 communication and Amended Interrogatory Responses are attached hereto as Exhibit H.

With it being clear that Plaintiff had no case against Wylde, instead of doing what they should have and amend the pleadings to dismiss Wylde by the Court-ordered deadline, Plaintiff ignored the deadline and did nothing.

All of these facts clearly show that there was no good-faith basis to name Wylde, Ernest Browne, or their respective entities, and Plaintiff and its counsel have clearly violated Rule 11.

V.  **AUTHORITY AND ARGUMENT**

   **A. Legal Standard**

Rule 11(b) provides, in relevant part, that when an attorney presents a pleading, motion, or other filing to the court, the attorney certifies to the best of his knowledge, information, and belief, after reasonable inquiry, that (1) the filing is not presented for an improper purpose; (2)

---

[6] That communication is not admissible under FRE 408, so it is not attached hereto.

the factual contentions in the filing have or will have evidentiary support; and (3) denials of factual contentions are warranted on the evidence or based on a reasonable belief or lack of information. Fed. R. Civ. P. 11(b). Rule 11 is meant "to deter baseless filings in district court and . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

Violation of any of the three obligations under Rule 11(b) provides independent grounds for sanctions. *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 803 (5th Cir. 2003). In determining compliance with Rule 11, the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances. *M2 Tech., Inc. v. M2 Software, Inc.*, 748 F. App'x 588, 590 (5th Cir. 2018); *Whitehead*, 332 F.3d at 802.

After "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). District courts have "wide discretion in determining what sanctions are appropriate" under Rule 11. *Silver v. Bemporad*, No. SA-19-CV-00284-XR, 2019 U.S. Dist. LEXIS 66036, at *7 (W.D. Tex. Apr. 18, 2019) (citing *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 877 (5th Cir. 1988)). Sanctions can include "an order directing payment to an opposing party of some or all of the reasonable attorney's fees or costs incurred as a result of the violation." *Connor v. Stewart*, No. 1:17-CV-827-RP, 2018 U.S. Dist. LEXIS 99519, at *12 (W.D. Tex. June 14, 2018). "[A]n attorney must have made a reasonable inquiry into the facts and law of a case at the time [they] affix[] [their] signatures on any papers to the Court." *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001).

### B. Plaintiff and its counsel knew unequivocally Wylde had no liability

Plaintiff and its counsel knew prior to filing the lawsuit that all of the Defendants were telling the same story: Shane Davis and Texas Pride acted alone. Plaintiff had no evidence to the

contrary, no evidence that any of the Defendants were lying, and not a shred of evidence that Wylde somehow controlled Texas Pride, nor had any knowledge or connection with the alleged infringement. This is true of all of the non-Davis Defendants. Faced with very unfavorable facts, Plaintiff and its counsel had two problems: (a) Texas Pride had been dissolved and had no assets, and (b) Davis had no assets. While it is often said in contingency fee cases that you need a three-legged stool—liability, damages, and the ability to recover—it is true of any case. Plaintiff only had, if any, liability as to the Davis Defendants. The damages were not there: Davis answered in his Interrogatory Responses that approximately \$2,300 profit[7] was received from the t-shirt sales. The ability to recover was non-existent as well.

Faced with these facts, Plaintiff named Wylde, Earnest Browne and their entities despite knowing there was no liability. In doing so, and in grouping the non-Davis Defendants in the allegations directly relating to the alleged infringement, Plaintiff and its counsel knowingly made assertions they knew had no basis in truth or in law. Naming the non-Davis Defendants was clearly a calculated decision to attempt to recover from parties Plaintiff and its counsel knew were not liable, and is clearly outside of the duties of a litigant under Rule 11.

### C. Plaintiff and its Counsel had no good faith basis to amend the pleadings

Plaintiff and its counsel's state of mind with regard to the baselessness of their claims is exemplified by Plaintiff's voluntary dismissal of all non-Davis Defendants except for Wylde when challenged under Rule 12(b). Plaintiff knew it had no basis to assert, even on information and belief, liability by any of the non-Davis Defendants, given the responses it received to its demand letters. Yet, Plaintiff refused to dismiss Wylde. After dismissing all of Wylde's entities, but continuing forward with Wylde as an individual, there were only two possible theories of

---

[7] Plaintiff may not have known the profit prior to the filing of the lawsuit, but it knew who was liable and that Davis/Texas Pride had no assets.

recovery as to Wylde that Plaintiff could possibly pursue: (a) contributory/inducing infringement, or (b) piercing the corporate veil of Texas Pride. No allegations of either theory appear in the Complaint. There is no allegation that Wylde directed or contributed to Texas Pride's allegedly infringing actions, that he profited from those actions, or that Texas Pride was his alter ego. To be clear, there is no evidence of either.

So, it begs the question, why didn't Plaintiff amend its pleadings early on—at least as early as the filing of the Motion to Dismiss when these allegations were made—to make such allegations? Plaintiff and its counsel knew they had no good faith basis to do so. They knew Davis admitted he acted alone. They knew Wylde had no knowledge or participation. They had already baselessly named Wylde and his entities, and now, faced with a Motion to Dismiss pointing out the Complaint's defect as to Wylde, they could not amend the pleadings to allege contributory infringement or allege an alter ego theory as to Texas Pride, or they would risk a second Rule 11 violation.

Instead, Plaintiff engaged in discovery to force Wylde to incur expenses to answer Interrogatories, the answers to which <u>Plaintiff and its counsel already knew.</u> The motive in doing so was clear. Plaintiff failed to amend its pleadings and instead engage in needless discovery simply to harass Wylde and make him spend money.[8]

### D. What Plaintiff and its Counsel should have done

It is not uncommon for a defendant who has been threatened with legal action to proclaim his innocence, lack of knowledge, or lack of participation in the facts and events giving rise to the cause of action. However, when a co-defendant not only confirms that defendant's story, but also admits to being the only one who acted, as is the case here, a plaintiff has two options. The plaintiff can either not file/dismiss the lawsuit as to that defendant, or a plaintiff can investigate

---

[8] Wylde will attach his relevant invoices along with discussion of the reasonableness of fees if this Rule 11 Motion is granted.

further to determine whether there is a good faith information and belief that one or both of the defendants is not telling the truth. That is what should have occurred in this case.

The one thing a plaintiff cannot do, and a plaintiff's attorney cannot advocate, participate or encourage, is what Plaintiff and its Counsel did in this case, namely file the lawsuit against the liable and non-liable defendants and attempt to recover from the non-liable defendants. Plaintiff and its counsel sought solely to harass Wylde and make him incur significant costs to defend himself by, at the very least, (a) baselessly naming him in this lawsuit, (b) refusing to dismiss him after he filed the Motion to Dismiss, (c) forcing him to engage in needless discovery by posing interrogatories to which they already knew the answers, (d) failing to dismiss him after receiving the answers to said interrogatories, (e) ignoring the deadline to amend the pleadings, and (f) forcing Wylde to file a Motion for Summary Judgement.

## VI. CONCLUSION AND PRAYER FOR RELIEF

Plaintiff should have used more discretion in deciding whether, and against who, to pursue. Only one conclusion can be drawn. This lawsuit was filed as to Wylde, his corporate entities, Browne and his corporate entities for the sole purpose to harass them. All of the factual contentions had no evidentiary support. Plaintiff and its counsel were aware. There was no good faith basis for Plaintiff to deny the factual contentions of which it was aware, and Plaintiff was aware of that as well. Plaintiff and its counsel should be jointly and severally liable for Wylde's attorneys' fees.

WHEREFORE, PREMISES CONSIDERED, Defendant Shawn Wylde prays that this Court dismiss all claims against him and award him his reasonable attorneys' fees and costs.

Respectfully submitted,

/s/ Robert L. McRae

Robert L. McRae –Attorney in Charge–
TSB # 24046410
Southern District Admission No: 942671
robert.mcrae@gunn-lee.com
Nick Guinn
TSB # 24087642
Southern District Admission No: 2810707
nick@gunn-lee.com
GUNN, LEE & CAVE, P.C.
8023 Vantage Drive, Suite 1500
San Antonio, Texas 78230
210/886-9500
210/886-9883 Fax

**ATTORNEYS FOR DEFENDANT SHAWN WYLDE**

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2020, pursuant to Federal Rules of Civil Procedure 11(c)(2) and 5, I served the foregoing to all counsel of record.

/s/ Robert L. McRae

Robert L. McRae